IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

L.C. LEWIS, PLAINTIFF,

VS. CIVIL ACTION NO. 4:07CV024-P-B

CANNON MOTORS, DEFENDANTS.

### MEMORANDUM OPINION

These matters come before the Court upon Defendants' motions to dismiss [18, 22]. After due consideration of the motions and the responses filed thereto, the Court is prepared to rule.

### I. FACTUAL BACKGROUND

The plaintiff was terminated from his employment as an auto body technician by Cannon Chevrolet – Oldsmobile – Cadillac – Nissan, Inc. on May 18, 2005. On June 15, 2005 the plaintiff filed a Charge of Discrimination with the EEOC and on October 23, 2006 the EEOC issued the plaintiff a Right to Sue letter which the plaintiff avers he received on October 27, 2006.

On January 22, 2007 the plaintiff initiated this action by filing a motion to appoint counsel and to proceed *in forma pauperis*. On April 24, 2007 the Court granted the motion to proceed *in forma pauperis* but denied the plaintiff's request to appoint counsel. Court's April 24, 2007 Order also required that "on or before May 8, 2007, plaintiff shall notify this Court in writing of his intention to go forward with this action *pro se* (without an attorney)." The Court warned the plaintiff that "failure to comply with this order may lead to dismissal of this lawsuit for failure to prosecute and for failure to obey an order of this Court."

On May 14, 2007, six days after the May 8, 2007 deadline for the plaintiff to inform the Court of his intention to proceed *pro se*, the U.S. Magistrate Judge entered a Report and

1

Recommendation that the plaintiff's action be dismissed for failure to prosecute. The Report and Recommendation also allowed the plaintiff to file an objection thereto within ten days. On May 24, 2007, ten days later, the plaintiff filed a *pro se* motion to "grant more time to me in this case," alleging that his lawyer, Louis Watson, Jr., had "failed to make an attempt to represent me at all." Alternatively, the plaintiff notified the Court of his intent to proceed *pro se*.

On June 14, 2007 the Court declined to adopt the Report and Recommendation, granted the plaintiff's motion to allow him to proceed *pro se*, and instructed the Clerk's Office to file the plaintiff's Complaint that was attached as Exhibit "1" to his original motion to appoint counsel and to proceed *in forma pauperis*, to issue process, and to instruct the U.S. Marshall Service to serve the process. The Court also warned that "[a]ny further failure of the plaintiff to comply with the court's deadlines will lead to a dismissal of his case for failure to prosecute."

On July 24, 2007 the plaintiff, apparently represented by counsel, was allowed to file an Amended Complaint. The Amended Complaint asserts claims for (1) race discrimination in violation of Title VII and 42 U.S.C. § 1981; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; and (4) punitive damages.

On July 25, 2007, the day after filing the Amended Complaint, the two lawyers who filed the Amended Complaint filed a motion to withdraw.

On August 26, 2007 the defendant filed a motion to dismiss arguing that the plaintiff's race discrimination claims fail as a matter of law because (1) the Complaint was not filed within 90 days of receipt of the EEOC's Right to Sue letter as required by 42 U.S.C. § 2000e-5(f)(1), rather, the Complaint was not actually filed until June 15, 2007, some 200 days after the plaintiff received the Right to Sue letter; (2) the one-year statute of limitations for the intentional infliction of emotional

distress claim has run; (3) the negligent infliction of emotional distress claim does not allege the essential elements of such a claim – *i.e.*, duty, breach, causation, and damages; and (4) the plaintiff's punitive damages claim must fail because his claims for compensatory damages must fail.

In its August 28, 2007 Order, the Court granted plaintiff counsels' motion to withdraw, stayed all proceedings for thirty days, required the plaintiff to file a notice of appearance of his new attorney or file written notice of his intent to proceed *pro se* by September 27, 2007 and ordered that the plaintiff's response to the defendant's motion to dismiss "shall be due on or before October 12, 2007."

On October 12, 2007 the plaintiff filed a response to the defendant's August 26, 2007 motion to dismiss.

On October 16, 2007 the defendant filed a second motion to dismiss, arguing that the plaintiff's action should be dismissed for failure to prosecute and for failure to comply with the Court's Order. More specifically, the defendant argues in its second motion to dismiss that the plaintiff failed to comply with the Court's August 28, 2007 Order requiring him to (1) file a notice of appearance of new counsel or a written notice of his intent to proceed *pro se* by September 27, 2007; and (2) to file a response to the defendant's first motion to dismiss by October 12, 2007.

## II. DISCUSSION

### A. Rule 12(b)(6) Standards

Pursuant to Fed. R. Civ. P. 12(b)(6) a defendant may file a motion to dismiss a plaintiff's claim or claims for failure to state a claim upon which relief can be granted. The traditional test for ruling upon a 12(b)(6), as announced in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), is "in appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint

3

should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." However, the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007) recently "retired" that test. In this regard, the Court in *Twombly* wrote:

> *Conley*'s "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the *Conley* Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, **this famous observation has earned its retirement**. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: **once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.** See *Sanjuan*, 40 F.3d, at 251 (once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint")

127 S.Ct. at 1969. (emphasis added).

The Court in *Twombly* formulated the proper standard in the following way:

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, [and] "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action", on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

127 S.Ct. at 1964-65. (some citations omitted for clarity).

Thus, the Court must determine whether the defendant has established that the plaintiff's factual allegations in his Amended Complaint, taken as true, are enough to raise a right to relief

4

above the speculation level.

Motions to dismiss are viewed with disfavor and are rarely granted. *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir.2000).In deciding a motion to dismiss under Rule 12(b)(6), the District Court accepts as true those well-pleaded factual allegations in the complaint. *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir.1995). The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff. *Sloan v. Sharp*, 157 F.3d 980, 982 (5th Cir.1998). "However, [the Court] will not strain to find inferences favorable to the plaintiff[]." *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir.2004).

## B. Defendant's First Motion to Dismiss

### 1. Race Discrimination Claims

The defendant argues that the plaintiff's Title VII claim is untimely because the original Complaint was technically filed well after the 90-day limitation period required by 42 U.S.C. § 2000e-5(f)(1). While it is true that the Complaint was not actually filed and served until June 15, 2007, after the Court ordered the Clerk's Office to do so, the plaintiff attached a copy of the Complaint as an exhibit to his motion to appoint counsel and to proceed *in forma pauperis* on January 22, 2007, which is within 90 days of the receipt of the EEOC's Right to Sue letter on October 27, 2006. In *Robinson v. City of Fairfield*, 750 F.2d 1507, 1511 (5th Cir. 1985), the Fifth Circuit held that the plaintiff's timely filing of a motion to appoint counsel and to proceed *in forma pauperis* was sufficient to meet § 2000e-5(f)(1)'s 90-day limitation period. *See also Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984) ("where a motion for appointment of counsel is pending ... equity would justify tolling the statutory period until the motion is acted upon.")

The Court concludes that the plaintiff's Title VII and § 1981[1] claims are adequately stated to survive the defendant's Rule 12(b)(6) motion because the plaintiff's factual allegations in his Amended Complaint, taken as true, are enough to raise a right to relief above the speculation level. This is not to say, however, that the Court is concluding that these claims will be ultimately successful. Rather, the plaintiff must still present adequate evidence to create genuine issues of material fact justifying a trial. This evidence must be developed in the discovery process as governed by the rules set forth by the U.S. Magistrate Judge and the Federal Rules of Civil Procedure.

In order to survive a possible motion for summary judgment filed by the defendant after the discovery period closes, the plaintiff must present sufficient evidence to create genuine issues of material fact regarding the following elements for a race discrimination claim.

"Title VII discrimination can be established through either direct or circumstantial evidence" and when a case is based on circumstantial evidence, the Court should look to the *McDonnell Douglas* test. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

"Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." *Laxton*, 333 F.3d at 578. (internal citations omitted).

For the instant plaintiff, a prima facie case of race discrimination requires proof that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action because of his race; and (4) similarly-situated individuals of another race were

---

[1] According to the Fifth Circuit Court of Appeals:"[u]sually, racial harassment is thought of in terms of Title VII [and] [a]long this line, our court has relied on Title VII principles for guidance in parallel § 1981 actions." *Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002) Accordingly, this court will view the plaintiff's claims under § 1981 in the same light as his Title VII claims.

6

treated more favorably. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

"The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for [the adverse employment action]. This causes the presumption of discrimination to dissipate." *Laxton*, 333 F.3d at 578.

"The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence [more probable than not] that the employer intentionally discriminated against [him] because of [his] protected status." *Laxton*, 333 F.3d at 578. (internal citations omitted). The Court in *Laxton* instructs:

> To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence."
> An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation...." ... The "rare" instances in which a showing of pretext is insufficient to establish discrimination are (1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred. A decision as to whether judgment as a matter of law is appropriate ultimately turns on " 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.' "

*Laxton*, 333 F.3d at 578-579. (internal citations omitted).

## 2. Intentional Infliction of Emotional Distress

The plaintiff's claim for intentional infliction of emotional distress fails as a matter of law because the statute of limitations period for such an intentional tort is one-year. *Jones v. B.L. Development Corp.*, 940 So.2d 961, 965 (Miss. Ct. App. 2006); Miss. Code Ann. § 15-1-35. Since the plaintiff was terminated on May 18, 2005, his deadline to file a claim for intentional infliction of emotional distress ran on May 18, 2006, well before he commenced this case.

Therefore, the plaintiff's intentional infliction of emotional distress claim should be dismissed with prejudice.

## 3. Negligent Infliction of Emotional Distress

Unlike an intentional tort, a claim for negligent infliction of emotional distress carries a three-year statute of limitations period. Thus, the plaintiff's claim in this case is timely. However, the Amended Complaint does not allege sufficient facts to make a claim for negligent infliction of emotional distress anything but speculative. Thus, pursuant to the U.S. Supreme Court's decision in *Twombly*, 127 S.Ct. at 1964-65, cited above, this claims should be dismissed with prejudice.

## 4. Punitive Damages

In a title VII case, a plaintiff may recover punitive damages by demonstrating that the defendant acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The availability of punitive damages "turns on the defendant's state of mind, not on the nature of its egregious conduct." *EEOC v. E.I. du Pont de Nemours & Co.*, 480 F.3d 724, 732-33 (5th Cir. 2007). In *Kolstad v. Am. Dental Association*, 527 U.S. 526 (1999), the U.S. Supreme Court laid out the evidentiary burden for a Title VII plaintiff to recover punitive damages. The defendant employer "must at least discriminate in the fact of a

perceived risk that its actions will violate federal law." *Kolstad*, 527 U.S. at 536. However, even intentional discrimination may not meet this standard where the employer is "unaware of the relevant provision" or "discriminates with the distinct belief that its discrimination is lawful." *Kolstad*, 527 U.S. at 539. Furthermore, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." *Kolstad*, 527 U.S. at 545.

The Court concludes that it is premature to rule upon the plaintiff's punitive damages claim because discovery has not yet taken place. After the close of discovery, not only must the plaintiff offer sufficient evidence to allow his race discrimination claims to go to trial, the plaintiff must also offer substantial evidence to support a recovery for punitive damages in conformity with *Kolstad*.

## **C. Defendant's Second Motion to Dismiss**

In their second motion to dismiss, the defendant argues that this action should be dismissed for failure to prosecute and for failure to comply with the Court's August 28, 2007 Order requiring the plaintiff to file a response to the defendant's first motion to dismiss by October 12, 2007.

Contrary to the defendant's argument, the plaintiff did in fact file a response to the defendant's first motion to dismiss on October 12, 2007.

The defendant also argues that the plaintiff failed to comply with the Court's Order requiring him to file a notice of appearance of his new attorney or a written notice of his intent to proceed *pro se* by September 27, 2007. However, given that plaintiff's counsel was allowed to withdraw and the plaintiff filed a response to both of the defendant's motions to dismiss, the Court concludes that the plaintiff has sufficiently notified the Court of his intent to proceed *pro se*.

Accordingly, the Court concludes that the defendant's second motion to dismiss should be

denied.

## III. CONCLUSION

For the reasons discussed above, the Court concludes that the defendant's first motion to dismiss [18] is granted insofar as the plaintiff's claims for intentional and negligent infliction of emotional distress are dismissed with prejudice, but is denied as to the plaintiff's Title VII and § 1981 claims. The defendant's second motion to dismiss is denied. Accordingly, and Order shall issue forthwith,

**THIS DAY** of November 20, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE